**Robert ESCALERA, Plaintiff–Appellant,**

v.

**Philip COOMBE, Superintendent of Eastern Correctional Facility, Defendant-Appellee.**

**No. 1216, Docket 87–2123.**

United States Court of Appeals, Second Circuit.

Submitted May 2, 1988.

Decided July 13, 1988.

Peter J. Avenia, Gombiner & Avenia, New York City, for plaintiff-appellant.

Elizabeth Holtzman, Dist. Atty. for Kings County, Leonard Joblove, Barbara D. Underwood, Asst. Dist. Attys., Kings County, Brooklyn, N.Y., for defendant-appellee.

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before OAKES, MESKILL and PRATT, Circuit Judges.

PER CURIAM:

This matter comes before us again, following a remand by the United States Supreme Court. *See Coombe v. Escalera,* — U.S. —, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988). The Supreme Court vacated our earlier decision which ordered the district court to grant petitioner-appellant Robert Escalera's petition for a writ of habeas corpus, unless certain conditions were met, *see Escalera v. Coombe,* 826 F.2d 185 (2d Cir.1987), and remanded to us for reconsideration in light of the Court's intervening decision in *Taylor v. Illinois,* — U.S. —, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988). *See* — U.S. at —, 108 S.Ct. at 1004. The parties, at our direction, filed simultaneous briefs addressing the effect of *Taylor* on this proceeding. We now reaffirm certain portions of our earlier decision and remand remaining matters to the

district court for further proceedings consistent with this opinion.

## BACKGROUND

The facts and procedural history of this case are laid out in detail in our earlier opinion. *See* 826 F.2d at 186–89. For purposes of this opinion, we will summarize only those matters necessary for an understanding of our disposition here. In 1976, Robert Escalera was convicted by a New York state jury of one count of felony murder. The charge arose out of an incident in 1975 in which Jesus Cordero was shot during a robbery attempt while walking in a Brooklyn park with two friends, Pasquale Nieves and Felix Torres.

Prior to trial, a hearing concerning the propriety of pretrial identification procedures was held pursuant to *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Testimony adduced at that hearing indicated that Nieves and Torres had identified Escalera as Cordero's killer on three occasions. The witnesses first chose photographs of Escalera from photo arrays that they viewed at the police station on two different occasions. Evidence suggested that the initial viewing was unsupervised and that the two witnesses may have viewed the photographs while together in the room. The witnesses subsequently identified Escalera after viewing him in a "showup" at the police station in which the suspect was presented alone. The state trial judge concluded that the pretrial identification procedures were not so suggestive that they would taint any subsequent in-court testimony, and he allowed Nieves and Torres to testify at trial.

At trial, after the state had presented all of its witnesses and after Escalera had testified in his own defense, Escalera's attorney requested leave to call the defendant's brother, Peter Escalera, as an alibi witness. The attorney claimed that Peter Escalera would testify that his brother was at home at the time the murder occurred. However, Peter Escalera was not on the list of alibi witnesses that the attorney had provided before trial in accordance with New York's alibi notice statute, N.Y. Crim.

Proc.Law § 250.20 (McKinney 1982). Defense counsel indicated that he had intended to call Escalera's father to give essentially the same testimony, but that the father was ill and unable to testify. The attorney had not, however, listed Escalera's father as an alibi witness either. *See Escalera v. Coombe*, 652 F.Supp. 1316, 1324 (E.D.N.Y. 1987).

The prosecution objected, asking that the proposed witness' testimony be precluded or that the prosecutor be given an opportunity to examine the witness during an adjournment with a stenographer present. The trial judge ruled the testimony inadmissible, concluding that defense counsel had offered " 'no plausible reason why the name of the defendant's brother was not originally included in the alibi notice.' " *See id.* at 1320 (quoting Tr. 291–92). The jury subsequently returned a verdict of guilty and Escalera was sentenced to fifteen years to life in prison. The Appellate Division of the Supreme Court affirmed his conviction without opinion. *See People v. Escalera*, 61 A.D.2d 890, 402 N.Y.S.2d 700 (2d Dep't), *leave to appeal denied*, 44 N.Y.2d 953, 408 N.Y.S.2d 1032, 380 N.E.2d 342 (1978).

In 1985, Escalera filed the instant petition in the district court, seeking a writ of habeas corpus. He claimed (1) that the trial judge's preclusion of a material alibi witness had violated his rights under the Compulsory Process Clause of the Sixth Amendment to the United States Constitution, and (2) that the trial judge's admission of unreliable in-court identification testimony violated his rights under the Due Process Clause of the Fourteenth Amendment. After concluding that Escalera had properly exhausted all of his state remedies, *see* 652 F.Supp. at 1318, 1320–21, the district court dismissed Escalera's petition on its merits. Judge Glasser concluded that the trial judge had been justified in precluding the proffered testimony of Peter Escalera. *See id.* at 1323–24. Judge Glasser also held that the in-court testimony of Nieves and Torres had not been tainted by the pretrial identification procedures. Relying on *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct.

375, 34 L.Ed.2d 401 (1972), the district court concluded that their testimony was independently reliable. *See* 652 F.Supp. at 1324–28. Citing 28 U.S.C. § 2254(d) (1982), Judge Glasser deferred to the trial judge's decision to disregard the eyewitnesses' testimony concerning the first photographic identification. *See* 652 F.Supp. at 1325 n. 9.

On appeal, we reversed. We agreed with Judge Glasser that Escalera had properly exhausted his state remedies, *see* 826 F.2d at 189, but we disagreed with him on both points going to the merits. First, we held that Escalera's right to present witnesses under the Compulsory Process Clause outweighed the state's interests in assuring truthful testimony and in avoiding undue surprise at trial. Noting that the inconvenience to the state could have been "easily remedied" by a brief continuance, *id.* at 190–91, we concluded that the trial judge had unconstitutionally precluded Escalera's proposed alibi testimony, *see id.* at 192. Second, we concluded that the district court had "erred in summarily deferring to the trial court's unstated conclusion that the initial photographic viewing did not occur." *Id.* at 193. Noting that an "uncontrolled, joint selection" from a photographic array, if it occurred, would have been "suspect," *id.* at 192 (citing *Styers v. Smith,* 659 F.2d 293, 297–98 (2d Cir.1981)), we concluded that the district court had erred in failing to hold its own evidentiary hearing to determine the circumstances surrounding, and the ultimate effect of, that initial photographic identification.

We noted that our resolution of the claim regarding the identification testimony normally would have necessitated a remand to the district court for the purpose of holding an evidentiary hearing. *See id.* at 194. However, we concluded that "the circumstances of this appeal favor resolution of the unresolved identification issues by the state courts if the state elects to re-try Escalera." *Id.* We therefore reversed the judgment of the district court and remanded the matter, with directions to "grant the petition for a writ of habeas corpus unless the state conducts a new *Wade* hearing and grants Escalera a new trial within sixty days." *Id.* The state then filed a petition for a writ of *certiorari* with the Supreme Court, which granted the writ, vacated our opinion and remanded for reconsideration in light of *Taylor.*

## DISCUSSION

Any reconsideration at this juncture of our earlier opinion must be limited to the scope of the Supreme Court's remand. *See Hyatt v. Heckler,* 807 F.2d 376, 381 (4th Cir.1986) (refusing to reach an issue outside the scope of a remand), *cert. denied,* — U.S. —, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987); *Aladdin's Castle, Inc. v. City of Mesquite,* 713 F.2d 137, 138–39 (5th Cir. 1983) (vacating a prior decision that went outside the scope of Supreme Court remand). Therefore, we will not reconsider issues that are not directly implicated by the Supreme Court's decision in *Taylor.*

In *Taylor,* the Court considered a case in which a state trial judge had refused to allow a defense witness to testify as a sanction for the defense attorney's failure to identify the witness in response to a pretrial discovery request. *See* — U.S. at —, 108 S.Ct. at 648. The defense attorney sought permission to call the witness on the second day of trial. When the trial judge inquired about the failure to identify the witness earlier, the attorney said that although his client had told him about the witness, he had been unable to locate him before trial. The following day, the witness appeared for an offer of proof. During questioning, the witness revealed that he had, in fact, met with defense counsel several days before the trial began. The substance of the witness' proffered testimony also differed dramatically from defense counsel's characterization provided on the previous day. *See id.* at —, 108 S.Ct. at 650. The trial judge refused to allow the witness to testify, noting the attorney's "willful violation of the [discovery] rules." *Id.* The jury subsequently convicted Taylor, the defendant. A state appellate court affirmed the conviction and Taylor sought review by the Supreme Court.

The Court affirmed the preclusion of Taylor's witness as a sanction for his attorney's misconduct. The Court first rejected the state's argument that no constitutional concerns are raised when material defense testimony is precluded pursuant to a rule of court practice. *See id.* at ——–——, 108 S.Ct. at 651–52. The Court also rejected Taylor's argument that the Compulsory Process Clause creates an absolute bar to the preclusion of such testimony pursuant to court rules. *See id.* at ——–——, 108 S.Ct. at 653–54. Rather, the Court concluded that a decision on the preclusion of defense testimony must be governed by an inquiry in each case into the defense attorney's justifications for his or her failure to comply with applicable rules. If the attorney's "explanation reveals that the [failure] was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the [Compulsory Process] Clause simply to exclude the [proffered] witness' testimony." *See id.* at ——, 108 S.Ct. at 655. (footnote omitted). The Court noted that alternative sanctions may be considered, but that a trial court is not necessarily required to employ them. *See id.* at ——, 108 S.Ct. at 653. Finally, the Court rejected the argument that a criminal defendant may not be punished for the errors of his or her attorney. "Whenever a lawyer makes use of the sword provided by the Compulsory Process Clause, there is some risk that he may wound his own client." *Id.* at ——, 108 S.Ct. at 657.

The Supreme Court's decision in *Taylor* did not involve any discussion of the constitutional propriety of identification testimony or procedures, nor did it involve any examination of the requirement that habeas petitioners exhaust all available state remedies before seeking relief in a federal court. Therefore, we need not and should not reconsider any such claims as part of this remand. We reaffirm our earlier holdings affirming Judge Glasser's conclusion that the exhaustion requirement had been met and reversing the district court's conclusion that the eyewitnesses' in-court testimony was independently reliable.

As to the Compulsory Process Clause claim, however, we do not believe that the record in this case permits us to apply the standards enunciated in *Taylor.* It is not possible for us to determine whether the failure of Escalera's attorney to comply with the alibi notice provision was "willful and motivated by a desire to obtain a tactical advantage." *See Taylor,* —— U.S. at ——, 108 S.Ct. at 655. Judge Glasser did note in his opinion below that the attorney's "apparent bad faith—or, at least, the absence of a good excuse—[wa]s evident" in the failure properly to give notice of his intent to call Escalera's brother. *See* 652 F.Supp. at 1324. But this alone is not enough. The absence of a good excuse is not necessarily commensurate with "willful" conduct and it is not readily clear whether Escalera's attorney was, in fact, motivated by a desire to obtain a tactical advantage. Although the Supreme Court held that certain willful misconduct by an attorney may permissibly be imputed to the attorney's client, *see* —— U.S. at ——–——, 108 S.Ct. at 656–57, such may not be the case when the attorney's error is the product of mere inadvertence or even gross negligence.

We therefore remand this case to the district court, with instructions to hold an evidentiary hearing to determine whether or not the failure of Escalera's counsel to list Peter Escalera as a potential alibi witness meets the standards enunciated in *Taylor* and in this opinion. If Judge Glasser should conclude that the attorney's conduct was sufficiently willful under *Taylor* to support preclusion of the witness' testimony, then the district court should proceed to conduct another evidentiary hearing to determine the circumstances surrounding, and the ultimate effect of, the initial photographic identification of Escalera by Nieves and Torres. Although we originally held that this matter should be left to the state courts, in the absence of other error requiring state court proceedings, it would be appropriate for the district court to hold its own evidentiary hearing. If, on the other hand, Judge Glasser

concludes that the conduct of Escalera's counsel falls short of the standards enunciated in *Taylor,* the district court should follow our original directive and should grant the petition for a writ of habeas corpus unless the state conducts a new *Wade* hearing and grants Escalera a new trial within sixty days.

## CONCLUSION

The matter is remanded to the district court for further proceedings consistent with this opinion.