Steven **BOUCINO**

v.

Lawrence **TILLMAN, Warden,**
**Somers Prison.**

No. 2:91CV00019(AHN).

United States District Court,
D. Connecticut.

March 17, 1992.

---

James J. Ruane, Bridgeport, CT, for plaintiff.

Julia DiCocco Dewey, Asst. State's Atty., Wallingford, CT, for defendant.

## RECOMMENDED RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

MARGOLIS, United States Magistrate Judge.

On January 10, 1991, petitioner Steven Boucino ["petitioner"], an inmate at the Connecticut Correctional Institution at Somers, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that the Connecticut alibi disclosure rules [1] are unconstitutional on their face and as applied to petitioner, and that his double jeopardy rights were violated in his conviction for first-degree robbery, under Conn.Gen.Stat. § 53a–134(a)(4), and for first-degree larceny, under Conn.

---

**1.** *See* note 8 *infra.*

Gen.Stat. § 53a–122.[2] Respondent Lawrence Tillman ["respondent"] filed his answer on April 17, 1991 (Dkt. # 8). On May 1, 1991, respondent filed additional portions of petitioner's state court record (Dkt. # 9).[3]

On July 15, 1991, petitioner filed his motion for summary judgment, brief in support, and Local Rule 9(c) Statement[4] (Dkt. ## 13–15, 20–21). On August 19, 1991, respondent filed his cross-motion for summary judgment, brief in support, and Local Rule 9(c) Statement (Dkt. ## 16–18). For the reasons stated herein, petitioner's motion for summary judgment is denied and respondent's cross-motion for summary judgment is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

■ The underlying facts giving rise to petitioner's state court conviction are as follows[5]: On May 22, 1980, at 11:30 a.m., petitioner and his accomplice entered the City Trust Bank in Cheshire, Connecticut, and robbed it of $9,000. Both men wore nylon stockings over their faces and were armed. Petitioner stood near the entrance of the bank, issuing commands to the customers and bank employees, while his accomplice retrieved the money from behind the counter. The entire incident lasted approximately ten to twelve minutes. Numerous bank employees gave descriptions of the two men. A bank teller, who at petitioner's direction stayed on the floor close to him, identified petitioner from two separate photographic arrays. A bank customer, who similarly had been close to petitioner in the bank's parking lot, also identified him from two separate photographic arrays.

Petitioner was charged in the Connecticut Superior Court in New Haven with first-degree robbery, under Conn.Gen.Stat. § 53a–134(a)(4), and with first-degree larceny, under Conn.Gen.Stat. § 53a–122.[6] *State v. Boucino,* Dkt. No. 62802. On July 2, 1980, the State filed a Demand for Notice of Alibi Witness pursuant to Connecticut Rules for the Superior Court § 763,[7] which demand was granted by Superior Court Judge Reynolds on July 15, 1980. A jury trial was conducted over a twelve-day period, from August 9 to August 27, 1982. On August 19, 1982, petitioner filed notice of intention to offer a defense of alibi, some ten days after jury selection and seven days into the prosecution's case; the prosecution objected to such filing, argument for which was postponed until August 26, 1982. (8/19/82 Tr. at 113–15;

---

2. Five exhibits were attached to the petition: a copy of a mittimus, dated September 23, 1982, in *State v. Boucino,* Dkt. No. 62802, in the New Haven Superior Court (Exh. A); a copy of petitioner's amended application for writ of habeas corpus, dated June 21, 1989, in *Boucino v. Lopes,* Dkt. No. 383, in the Tolland Superior Court (Exh. B); a copy of Superior Court Judge Axelrod's Memorandum of Decision, filed November 23, 1990, in *Boucino v. Lopes* (Exh. C), reported at 1990 WL 264728, 1990 Conn.Super. LEXIS 1776; excerpts from the trial on July 25, 1989, in *Boucino v. Lopes* (Exh. D); and additional excerpts from the trial on May 22, 1989, in *Boucino v. Lopes* (Exh. E).

For the texts of Conn.Gen.Stat. §§ 53a–134(a)(4) and 53a–122, *see* note 12 *infra.*

3. The state court record included copies of the following: transcripts from oral arguments, evidentiary hearings, and petitioner's trial in *State v. Boucino* on August 12–13, 16–20, 23–27, 1982; transcripts from oral argument, evidentiary hearing, and sentencing on September 23, 1982; and transcript from trial in *Boucino v. Lopes* on May 21–22, July 24–26, and August 21, 1989.

4. An Appendix contained excerpts from the trial in *Boucino v. Lopes* from May 21–22, July 25, and August 21, 1989, as well as excerpts from a deposition taken of petitioner's trial counsel on March 7, 1989.

5. The recitation of facts is found in *State v. Boucino,* 199 Conn. 207, 208–09, 216–18, 506 A.2d 125 (1986). In ruling on a petition for habeas corpus, a federal court must show deference to the factual findings of the state court; as long as a full and fair hearing has been held in the state court, the findings of a state court are considered to be presumptively correct, unless the federal court concludes that the petitioner has submitted "convincing evidence that the factual determination by the State court was erroneous." *Ventura v. Meachum,* 957 F.2d 1048, 1054 (2d Cir.1992) (citation omitted).

The procedural history is set forth in the parties' Local Rule 9(c) Statements, as to which there is no dispute.

6. *See* note 12 *infra.*

7. *See* note 8 *infra.*

8/26/82 Tr. at 1001–12). Such alibi witnesses purportedly would have placed petitioner at the Gold Bar Restaurant in Torrington, Connecticut, at the same time as the bank robbery in Cheshire; the only reason proffered for the delay was that petitioner "did not want these people harassed." (8/26/82 Tr. at 1008). That day, Superior Court Judge Hadden granted the prosecution's oral motion to preclude petitioner from using alibi witnesses, finding that petitioner had "utterly failed to comply with the requirements of Section[s] 762 and 763" and that no "good cause" had been demonstrated to grant an exemption under the rules. (*Id.* at 1011).

On August 27, 1982, the jury convicted petitioner on both counts. After oral argument and an evidentiary hearing, on September 23, 1982, Judge Hadden denied petitioner's motion for new trial, which concerned the judge's refusal to permit the alibi witnesses to testify. That same day, Judge Hadden sentenced petitioner to a term of ten to twenty years on the robbery charge, and five to twenty years on the larceny charge, to be served consecutively, for a total effective sentence of fifteen to forty years.

Petitioner thereafter appealed his conviction to the Connecticut Supreme Court, where he was represented by present counsel. Petitioner made five arguments, including the same alibi and double jeopardy issues asserted here. On March 18, 1986, such conviction was affirmed. *State v.*

*Boucino,* 199 Conn. 207, 506 A.2d 125 (1986).

On September 8, 1987, petitioner filed his state habeas petition, *Boucino v. Lopes,* Dkt. No. 383, in the Tolland Superior Court, where he similarly was represented by present counsel. In his amended petition, petitioner made a number of allegations, including the alibi argument. A six-day trial was held thereon, on May 21–22, July 24–26, and August 21, 1989. On November 23, 1990, Superior Court Judge Axelrod issued a twenty-two-page decision denying the petition, which decision addressed solely the issue of allegedly ineffective assistance of counsel.

## II. DISCUSSION

### A. ALIBI ISSUE

█ Petitioner argues that Connecticut's alibi rules, Connecticut Rules for the Superior Court §§ 762–68,[8] are unconstitutional on their face because: (1) discovery is not reciprocal, because the State is afforded a disproportionately lengthy time to respond to a criminal defendant's submission of alibi witnesses, but a criminal defendant is held to a limited time in which to respond; and (2) the rules authorize the sanction of exclusion without consideration of appropriate balancing factors. Petitioner further argues that such rules were unconstitutionally applied to him, in that there was no prejudice to the State by the delay in petitioner's disclosure.

---

**8.** Section 763 provides in full:

Upon written demand filed by the prosecuting authority stating the time, date, and place at which the alleged offense was committed, the defendant shall file *within ten days, or at such other time as the judicial authority may direct,* a written notice of his intention to offer a defense of alibi. Such notice by the defendant shall state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon whom he intends to rely to establish such alibi.

(emphasis added).

Section 764 provides in full:

If the written demand and notice have been filed pursuant to Sec. 763, the prosecuting authority, *within ten days after filing of the notice, but in no event less than ten days*

*before the trial unless the judicial authority otherwise directs,* shall file a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied upon to rebut testimony of any of the defendant's alibi witnesses.

(emphasis added).

Section 766 reads in relevant part: "Upon the failure of either party to comply with the requirements of [sections 763–64], the judicial authority may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at the scene of the alleged offense."

Section 767 further provides: "For good cause shown, the judicial authority may grant an exception to any of the requirements of Secs. 764 through 766."

The constitutionality of notice of alibi statutes was first addressed in *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), in which the United States Supreme Court rejected a challenge to Florida's statute on Fifth Amendment grounds, finding that such rule was "carefully hedged with reciprocal duties ..." *Id.* at 81, 90 S.Ct. at 1894. The Court continued:

> Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate. Reflecting this interest, notice-of-alibi provisions, dating at least from 1927, are now in existence in a substantial number of States. The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as "due process" is concerned, for the instant Florida rule, which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.

*Id.* at 81–82, 90 S.Ct. at 1894–1895 (footnotes omitted).

The reciprocity issue was addressed further in *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), which invalidated Oregon's notice of alibi rule because it lacked reciprocity, in which it did not compel the state prosecution to disclose its rebuttal witnesses:

> [W]e ... hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a "search for truth" so far as defense witnesses are concerned, while maintaining "poker game" secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at

the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.

*Id.* at 475–76, 93 S.Ct. at 2212 (footnote omitted).

In its decision on petitioner's appeal, the Connecticut Supreme Court observed that Connecticut's "notice of alibi discovery rules are similar in scope and wording to those used in the federal systems and most states." 199 Conn. at 209, 506 A.2d 125. As to the timing issue, the Connecticut Supreme Court characterized petitioner as "misinterpret[ting]" the rules, which it found to "treat each party with an even hand" as required by *Wardius* and *Williams*. *Id.* 199 Conn. at 212, 506 A.2d 125. As to the balancing issue, the Connecticut Supreme Court held:

> We recognize, ... as have most courts addressing the issue, that exclusion of alibi witnesses may not be justified in all cases where the defendant has failed to comply with the discovery rules. The trial court must weigh the need for exclusion against the defendant's right to present a defense. The decision is within the sound discretion of the trial court and will turn on the facts of the particular case. Factors which the trial court must consider include: "whether the disclosure violation was technical or substantial, the timing of the ultimate disclosure, the reason, if any, for the violation, the degree of prejudice to the parties respectively offering and opposing the evidence, whether any resulting prejudice might be cured by a postponement and, if so, the overall desirability of a continuance."

*Id.* at 214, 506 A.2d 125 (multiple citations omitted). The court specifically found that petitioner's non-disclosure was intentional and not due to inadvertence. *Id.* at 211 & n. 4, 214, 506 A.2d 125.[9] The court thus concluded, "Where disclosure is intentionally withheld, ordinarily there is no abuse of

9. The same conclusion was reached by Superior Court Judge Axelrod in his memorandum of decision: "The Court enters a specific finding that trial counsel did not disclose the names of

the alibi witnesses as a result of his client informing him that his client did not want his alibi witnesses harassed by the police." (Petitioner's Exh. C, at 7).

discretion in excluding proffered testimony." *Id.* at 215, 506 A.2d 125 (citations omitted).

Some two years later, the United States Supreme Court issued its decision in *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798, *reh. denied*, 485 U.S. 983, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988), which similarly concerned a defense counsel's attempt to call a defense witness not previously disclosed to the prosecution. The trial judge precluded such testimony, in light of counsel's "blatant" and "willful" violation of the Illinois discovery rules and in light of the dubious credibility of the proffered witness. The Supreme Court upheld the constitutionality of petitioner's conviction for attempted murder:

> The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.... The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.
>
> ... Rules that provide for pretrial discovery of an opponent's witnesses serve the same high purpose. Discovery ... minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony. The "State's interest in protecting itself against an eleventh-hour defense" is merely one component of the broader

public interest in a full and truthful disclosure of critical facts.

*Id.* at 410–12, 108 S.Ct. at 653 (citations & footnotes omitted). The Court also categorically rejected petitioner's argument that less drastic alternatives, such as a continuance of the trial, were appropriate. *Id.* at 413–16, 108 S.Ct. at 655–56. The Court explained:

> The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance [in addition to the defendant's right to offer the testimony of witnesses in his favor].
>
> A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the [Sixth Amendment] simply to exclude the witness' testimony.

*Id.* at 414–15, 108 S.Ct. at 655–56 (citations & footnotes omitted). The "severe sanction" of preclusion was appropriate, in light of counsel's willful conduct and the strong implications that the proffered testimony was perjurious. *Id.* at 416–17, 108 S.Ct. at 656–57.[10] *See also Michigan v. Lucas,* —— U.S. ——, ——–——, 111 S.Ct. 1743, 1746–

10. Petitioner relied upon *Escalera v. Coombe,* 826 F.2d 185 (2d Cir.1987), concerning New York's notice of alibi statute, issued a few months prior to *Taylor,* which imposed more stringent conditions than those set forth by the Supreme Court. At Escalera's state court trial, the judge had precluded the petitioner's brother from testifying as an alibi witness because the brother had not been included on the list of alibi witnesses previously provided to the prosecutor. The Second Circuit ruled that in a federal habeas petition on this preclusion question, the federal court must "balance[ ] the defendant's interest in presenting his 'crucial' claim against the state's legitimate interest in conduct-

ing the prosecution without the substantial prejudice that might follow the last minute introduction" of alibi testimony. *Id.* at 190 (citation omitted). The court found that such balance tipped strongly in petitioner's favor, particularly since the preclusion sanction was not harmless error. *Id.* at 190–92, 193–94.

However, the Supreme Court vacated *Escalera* and remanded it for reconsideration in light of *Taylor.* 484 U.S. 1054, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988). The Second Circuit, in turn, remanded the case back to the district judge for a determination of whether counsel's non-compliance was "willful." 852 F.2d 45, 47–49 (2d Cir.1988).

48, 114 L.Ed.2d 205 (1991) (preclusion of defense testimony where defense counsel's failure to abide by notice provisions of Michigan's rape-shield statute was not *per se* violation of Sixth Amendment).

Contrary to petitioner's arguments, and consistent with the conclusion drawn by the Connecticut Supreme Court, Connecticut's notice of alibi rules are sufficiently reciprocal, as required in *Williams* and *Wardius* in that "each party" is "treat[ed] ... with an even hand." 199 Conn. at 212, 506 A.2d 125. Petitioner fares no better regarding his challenge to the range of sanctions imposed. Section 766 provides that "the judicial authority *may* exclude the testimony of any undisclosed witness ..." (emphasis added); preclusion thus is optional, not mandatory. Furthermore, § 767 further provides that "[f]or good cause shown, the judicial authority may grant an exception to any of the requirements" set forth in the notice of alibi rules. The balancing test described by the Connecticut Supreme Court is fully consistent with the approach taken by the United States Supreme Court in *Taylor.*

■ The state courts' findings that petitioner's non-disclosure was intentional are binding upon this court. *See* note 5 *supra.* As the United States Supreme Court specifically ruled in *Taylor,* it is "entirely consistent" with the purposes of the Sixth Amendment to preclude a defense witness' testimony where defense counsel's failure to disclose such witness was "willful" and "tactical." 484 U.S. at 415, 108 S.Ct. at 656. The same analysis holds true with respect to petitioner's claim that the Connecticut notice of alibi rules were unconstitutionally applied in his case. Petitioner's arguments might have some merit if his disclosure were only *slightly* untimely, or were made at least some time prior to the commencement of trial. In this instance, however, petitioner's response was filed more than two years after the granting of the State's demand, and ten days after jury selection and seven days into the prosecution's case.

■ The "harmless error" test was applied just last month in *Poo v. Hood,* 89 Civ. 7874 (MBM), 1992 WL 30617, 1992 U.S. Dist. LEXIS 1535 (S.D.N.Y. Feb. 13, 1992),[11] in which the habeas petitioner complained that preclusion of his alibi defense at trial was not a proper sanction for his counsel's failure to comply with New York's notice of alibi statute. Unlike the present case, the actions of petitioner's trial counsel were not "willful." Slip op. at *11. Such counsel specifically had considered, and rejected, calling petitioner's wife as an alibi witness, as he believed her testimony would appear "contrived." *Id.* at *12. Only when his defense "strategy was reduced to ... shambles" in light of the convincing testimony of the complaining witness did "[i]t then bec[o]me apparent" that counsel would have to call Mrs. Poo as an alibi witness. *Id.* at *12–13. The district judge then applied the harmless error standard, finding that "the potency of the withheld evidence, compared to what was presented was negligible." *Id.* at *13. In colorful language, the court held:

> [A]lthough I cannot find on this record that [petitioner's trial counsel] sought purposely to sandbag the prosecution, and so exclusion of the testimony was not warranted under *Taylor* and *Lucas,* I do find that there was little if any sand in the bag. Which is to say, if there was error in excluding the testimony, the error was harmless beyond any doubt based on reason.

*Id.* at *13–14.

The same holds true here. So-called alibi witnesses testified at the habeas trial, whom petitioner alleged would have placed him at the Gold Bar Restaurant in Torrington at the time of the bank robbery in Cheshire. As recounted by Superior Court Judge Axelrod, none of these witnesses had any specific recollection of the date in May 1980 that petitioner allegedly was

---

11. In *Escalera, supra,* 826 F.2d at 193, the Second Circuit "assum[ed] without deciding" that such preclusion errors are subject to the "harmless error" analysis under *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 *reh. denied,* 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967).

present at this restaurant. (Petitioner's Exh. C, at 14–17; 7/25/89 Tr. at 18–20, 26, 27–28; 8/21/89 Tr. at 3–4, 5–7, 18–20). Judge Axelrod expressly "f[ou]nd[ ] that none of the so-called alibi witnesses would have been able to place the petitioner at a location different from the scene of the crime." (Petitioner's Exh. C, at 17). Thus, given the extremely tenuous nature of the purported alibi testimony, any alleged error in precluding such testimony "was harmless beyond a reasonable doubt."

## B. DOUBLE JEOPARDY ISSUE

 Petitioner argues that his conviction and consecutive sentences for first-degree robbery and first-degree larceny[12] constitute punishment for the same offense, in violation of his Fifth Amendment right against double jeopardy. Seventy years ago, the United States Supreme Court held in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) that two offenses are deemed to be the same for purposes of double jeopardy analysis unless each requires proof of a fact not required for the other. As the Connecticut Supreme Court observed, these two offenses "require proof of distinct elements"—robbery requires proof of varying degrees of physical force, whereas larceny requires proof as to the value of the money taken from the bank. 199 Conn. at 222–24,

506 A.2d 125. Thus, the double jeopardy claim was rejected under *Blockburger,* as "[e]ach statute requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. at 182. The same conclusion is reached here.[13]

## III. CONCLUSION

Accordingly, for the reasons stated above, petitioner's motion for summary judgment (Dkt. # 13) is *denied* and respondent's cross-motion for summary judgment (Dkt. # 16) is *granted.*

*See* 28 U.S.C. § 636(b) *(written objections to ruling must be filed within ten days after service of same);* F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989) *(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).*

---

12. At the time of the offense, Conn.Gen.Stat. § 53a–133 provided:

A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny.

Section 53a–134(a)(2) provides:

A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: ... (2) is armed with a deadly weapon, ... Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, ... any other crime.

Section 53a–119 provides: "A person commits larceny when, with intent to deprive another of

property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."

At the time of the offense, § 53a–122 provided: "A person is guilty of larceny in the first degree when: ... (2) the value of the property ... exceeds two thousand dollars."

13. As the Second Circuit observed last year:

In most recent cases, the Supreme Court has made clear that the *Blockburger* test does not end the inquiry. Even if the crimes are the "same" under *Blockburger,* a legislature can nonetheless authorize cumulative punishments, but only by clearly indicating its intent to do so. In determining the relevant legislative intent, federal courts are bound by the state courts' construction of the statutes at issue.

*Daniels v. Bronson,* 932 F.2d 102, 106 (2d Cir. 1991) (citations omitted).

Because this court has determined that the two offenses are not the "same" under *Blockburger,* there is no need to consider these additional matters.