Casim NOBLE, Petitioner–Appellee,

v.

Walter R. KELLY, Superintendent, Respondent–Appellant.

No. 00–2154.

United States Court of Appeals, Second Circuit.

Argued: Sept. 25, 2000.

Decided: April 5, 2001.

Philip L. Weinstein, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Petitioner–Appellee.

Bonnie M. Mitzner, Assistant District Attorney, Sullivan County, N.Y. (Stephen F. Lungen, District Attorney, and Karen Mannino, Assistant District Attorney, on the brief), for Respondent–Appellant.

Before CARDAMONE, JACOBS, and SACK, Circuit Judges.

PER CURIAM:

Casim Noble's petition for a writ of habeas corpus challenges his conviction for attempted murder and related offenses on the ground that his Sixth Amendment Compulsory Process rights were violated when the state trial court ruled that alibi testimony would be excluded because defense counsel failed to comply with a state procedural rule requiring advance notice of intent to call alibi witnesses. Alternatively, Noble argues that his counsel's noncompliance rendered his counsel's services constitutionally ineffective. The United States District Court for the Southern District of New York (Sand, J.) granted Noble's petition for a writ of habeas corpus and directed the Respondent either to release Noble or to retry him. *See Noble v. Kelly*, 89 F.Supp.2d 443, 464 (S.D.N.Y. 2000).

We affirm the judgment of the district court.

## BACKGROUND

Familiarity with the facts of the case and the details of Noble's state criminal trial as set forth in *Noble*, 89 F.Supp.2d at 445–50, is assumed. Noble was convicted in the Supreme Court of the State of New York, Sullivan County, for attempted murder and various related offenses. Noble's petition for habeas relief challenges the exclusion of testimony that Noble was inside a bar at the time the victim was shot in a car outside.

New York Criminal Procedure Law treats an alibi witness as a special type. Section 250.20 provides that the government may serve upon the defense, up to twenty days after arraignment, a demand that the defense identify any witness who intends to testify that "at the time of the

commission of the crime charged [the defendant] was at some place or places other than the scene of the crime." N.Y.Crim. Proc. L. § 250.20. The defense has eight days to respond, is under a continuing duty to respond as circumstances and intentions change throughout the trial process, and risks the sanction of exclusion for failure to comply: "If at the trial the defendant calls such an alibi witness without having served the demanded notice ... the court may exclude any testimony of such witness relating to the alibi defense." *Id.* The court retains discretion to accept the testimony, but if it does, it must grant the government time to prepare a rebuttal. *See* N.Y.Crim. Proc. L. § 250.20 ("The court may in its discretion receive such testimony, but before doing so, it must, upon application of the people, grant an adjournment not in excess of three days.").

The prosecution appropriately served an alibi witness request upon Noble's counsel, to which counsel responded that no alibi witnesses were anticipated. At trial and in the habeas proceedings, the prosecution and Noble have disputed whether Steven Yamagata should have been identified as an alibi witness in response to the prosecution's § 250.20 demand. According to the prosecution's evidence at trial, the victim was sitting in a car parked outside the "Around the Corner Bar," and was shot at close range by one of three assailants. The victim and other witnesses identified Noble as the gunman. Following the testimony of the first defense witness, a colloquy ensued in which the prosecution challenged counsel's intention to call Yamagata as a witness, and the court asked what Yamagata would say. Noble's counsel responded that Yamagata "was inside the bar when he heard the shots, and he was playing pool or some other game in there, and Casim [Noble] was playing [a] video game, and they both exited the bar together."

The trial judge asked defense counsel to explain why Yamagata was not an alibi witness whose testimony should have been noticed in advance pursuant to § 250.20. Defense counsel responded that Yamagata was not an alibi witness because the scene of the crime specified in the indictment was the vicinity of the Around the Corner Bar, and that Yamagata's testimony—that Noble was *in* the bar—would place him *at* the scene rather than furnish the alibi that he was elsewhere. After taking the matter under advisement, the court adopted the competing view that, in light of the prosecution's pre-trial discovery responses, the scene of the crime for the purpose of alibi analysis, was "in front of the [Around the Corner B]ar." As a sanction for defense counsel's failure to give notice under § 250.20, the court excluded Yamagata's testimony.

The jury convicted Noble of attempted murder in the second degree, two counts of criminal use of a firearm in the first degree, and criminal possession of a weapon in the second degree. He was sentenced chiefly to two terms of 12½ to 25 years of imprisonment and one term of 7½ to 15 years of imprisonment, all to run concurrently. On Noble's appeal, the Appellate Division of the New York Supreme Court did not decide whether the preclusion of the alibi testimony was constitutional error, because it held that even if it were, any error introduced thereby was harmless. *See People v. Noble,* 209 A.D.2d 735, 736, 618 N.Y.S.2d 123, 124 (3d Dep't 1994). The court rejected Noble's claim that his counsel was ineffective on the ground that Noble only alleged a "simple disagreement with trial strategies and tactics," and was therefore not sufficient to overturn the convictions. *Id.* Noble's application for leave to appeal to the New York Court of Appeals was summarily de-

nied. *See People v. Noble,* 84 N.Y.2d 1036, 647 N.E.2d 464, 623 N.Y.S.2d 192 (1995).

Noble petitioned for a writ of habeas corpus in 1997. The district court granted the writ on the ground that the trial court's preclusion of Yamagata's testimony violated Noble's compulsory process rights under the Sixth Amendment. *See Noble,* 89 F.Supp.2d at 454–61. Alternatively, the court held that defense counsel's failure to follow the procedures for calling an alibi witness amounted to constitutionally ineffective counsel. *See id.* at 461–63. We affirm on the first ground and therefore do not reach the second.

## DISCUSSION

### I. Timeliness

■ Title I of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, § 101, 110 Stat. 1214, 1217 (codified at 28 U.S.C. § 2244), imposes a time limit for filing habeas petitions. *See* 28 U.S.C. § 2244(d)(1). AEDPA was enacted on April 24, 1996; prisoners whose convictions became final before that date had one year—until April 24, 1997—to file. *See Ross v. Artuz,* 150 F.3d 97, 103 (2d Cir. 1998). Noble's conviction became final January 30, 1995, when leave to appeal to the New York Court of Appeals was denied. The district court received his petition on July 22, 1997, after the deadline; but Noble contends that before the time expired he had placed the petition in the hands of the prison authorities for mailing.

■ The Supreme Court held in *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), that a prisoner appearing *pro se* satisfies the time limit for filing a notice of appeal if he delivers the notice to prison officials within the time specified. This "prison mailbox" rule is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court. *See id.* at 270–71, 274, 108 S.Ct. 2379.

As the district court correctly concluded, this rationale applies with equal force to Noble's circumstances. *See Noble,* 89 F.Supp.2d at 450–53. Noble's petition for a writ of habeas corpus was made from jail without the benefit of counsel. As the district court noted, the prison mailbox rule has been extended to a variety of circumstances, including administrative filings, *see Tapia–Ortiz v. Doe,* 171 F.3d 150, 152 (2d Cir.1999) (per curiam), service of discovery responses, *see Faile v. Upjohn Co.,* 988 F.2d 985, 988 (9th Cir.1993), motions for reconsideration under Fed. R.Civ.P. 59, *see Smith v. Evans,* 853 F.2d 155, 161 (3d Cir.1988), and motions for a new trial under Fed.R.Crim.P. 33, *see Marinez v. United States,* No. 89 Cr. 701, 1996 WL 51201, at *2 (S.D.N.Y. Feb.8, 1996). A number of other circuits have extended the rule to *pro se* petitions for habeas relief. *See Miles v. Prunty,* 187 F.3d 1104, 1106–07 & n. 2 (9th Cir.1999); *Nichols v. Bowersox,* 172 F.3d 1068, 1077 (8th Cir.1999) (en banc); *Jones v. Bertrand,* 171 F.3d 499, 502 (7th Cir.1999); *Hoggro v. Boone,* 150 F.3d 1223, 1226 n. 3 (10th Cir.1998); *Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir.1998); *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998); *In re Sims,* 111 F.3d 45, 47 (6th Cir.1997) (per curiam). Moreover, this Court has observed that "[w]hen a prisoner is proceeding *pro se* ... federal courts generally consider his or her petition for habeas corpus to have been filed as of the date it was given to prison officials for forwarding to the court clerk." *Adeline v. Stinson,* 206 F.3d 249, 251 n. 1 (2d Cir.2000) (per curiam); *cf. Nelson v. Walker,* 121 F.3d 828, 832 n. 2 (2d Cir.1997) (holding that the date of delivery to prison officials is the relevant date for purposes of determining

whether a notice of appeal was filed before the enactment of AEDPA).

We conclude that the district court properly extended the prison mailbox rule to petitions for writs of habeas corpus.

## II. Preclusion

### A. Standard of Review

Under AEDPA, the federal courts lack power to grant a writ under 28 U.S.C. § 2254 unless the state court ruling on the federal constitutional issue is either "contrary to ... clearly established Federal law" or "involved an unreasonable application of ... clearly established Federal law." *See id.* § 2254(d)(1); *see also Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). We recently held, however, that AEDPA deference is compelled only when the claim has been "adjudicated on the merits" in the state court, and further held that if a state court decides a case without citing to federal law, the "pre-AEDPA standard of review" applies. *See Washington v. Schriver,* 240 F.3d 101, 107–10 (2d Cir.2001). It is not essential to determine whether AEDPA applies here, as our conclusion is the same under either standard of review.[1]

As for the district court's decision, we review a decision to grant habeas relief *de novo. See Smalls v. Batista,* 191 F.3d 272, 277 (2d Cir.1999).

### B. Constitutionality

We assume, as did the district court, that Yamagata's anticipated testimony qualifies as alibi testimony under § 250.20. The state court ruling on that score is an interpretation of state law that we will not review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) ("Because federal habeas corpus relief does not lie for errors of state law ... federal habeas review ... is limited, at most, to determining whether the state court's finding was so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation."). The state court's determination that Yamagata was an alibi witness was not arbitrary or capricious.[2] In any case, neither party has challenged this finding on appeal.

The district court held that it was constitutional error to exclude Yamagata's testimony absent a finding that defense counsel's non-compliance with § 250.20 was willful. We agree.

The Sixth Amendment's Compulsory Process Clause, applicable to state criminal proceedings through the Due Process Clause of the Fourteenth Amendment, *see Washington v. Texas,* 388 U.S.

---

1. The district court's decision, which predates both *Williams* and *Washington,* applies the "contrary to" portion of § 2254, holding that the state trial court's failure to inquire into whether defense counsel's behavior was willful amounted to the application of the "wrong standard." *Noble,* 89 F.Supp.2d at 461.

2. If permitted, Yamagata would have testified that the perpetrator was inside the bar, playing a video game when the shooting occurred. Nothing in the record indicates that Noble could have committed the attempted murder under these circumstances: the witnesses testified that Noble shot the victim from close range, standing just outside the victim's car. This testimony arguably places Yamagata within the definition of an alibi witness. *See Black's Law Dictionary* 72 (7th ed. 1999) (defining "alibi" as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time.").

14, 17–19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), provides that "the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor...." U.S. Const. amend. VI. In *Taylor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the Supreme Court upheld an order excluding the testimony of a defense witness as a sanction for counsel's (i) noncompliance with a discovery rule that required notice of intention to call the witness, and (ii) misleading the court concerning his knowledge of the witness's whereabouts. Although confirming that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense," *id.* at 408, 108 S.Ct. 646, the Court ruled that courts must balance that right against the State's interest in an orderly trial: "[T]he trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony," *id.* at 411, 108 S.Ct. 646. "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Id.* at 412 n. 17, 108 S.Ct. 646 (quoting *Williams v. Florida*, 399 U.S. 78, 81, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)) (internal quotation marks omitted).

The Court declined to issue comprehensive guidelines for this balancing process, but stated that a trial court should consider "the fundamental character of the defendant's right to offer the testimony of witnesses in his favor," "[t]he integrity of the adversary process," "the interest in the fair and efficient administration of justice," and "the potential prejudice to the truth-determining function of the trial process." *Id.* at 414–15, 108 S.Ct. 646. The Court then held:

A trial judge may certainly insist on an explanation for a party's failure to comply with a request to identify his or her witnesses in advance of trial. If that explanation reveals that the omission was *willful and motivated by a desire to obtain a tactical advantage* that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony.

*Id.* at 415, 108 S.Ct. 646 (emphasis added). The Court concluded that the conduct of Taylor's counsel amounted to "willful misconduct" for which exclusion is appropriate, "[r]egardless of whether prejudice to the prosecution could have been avoided." *Id.* at 417, 108 S.Ct. 646.

In a pre-*Taylor* case, this Court ruled that alibi testimony is so critical that it cannot be excluded notwithstanding procedural defaults, even where, as here, counsel "offered the court no reasonable explanation" for non-compliance. *Escalera v. Coombe*, 826 F.2d 185, 188 (2d Cir.1987). Only a "demonstration of substantial prejudice to the prosecution's case" was deemed sufficient to warrant exclusion of alibi testimony. *Id.* at 194.

The Supreme Court vacated this Court's *Escalera* decision and remanded for reconsideration in keeping with *Taylor*. *See Coombe v. Escalera*, 484 U.S. 1054, 108 S.Ct. 1004, 98 L.Ed.2d 971 (1988). This Court, in turn, remanded the matter to the district court for further inquiry consistent with *Taylor*:

[The district court judge] did note in his opinion below that the attorney's "apparent bad faith—or, at least, the absence of a good excuse—[wa]s evident" in the failure properly to give notice of his intent to call [an alibi witness]. But this alone is not enough. The absence of a good excuse is not necessarily commensurate with "willful" conduct and it is not readily clear whether Escalera's

attorney was, in fact, motivated by a desire to obtain a tactical advantage. *Escalera v. Coombe*, 852 F.2d 45, 48 (2d Cir.1988) (per curiam) (quoting *Escalera v. Coombe*, 652 F.Supp. 1316, 1324 (E.D.N.Y. 1987)) (citations omitted).

We agree with the district court that under the circumstances of this case, the state trial court could have used less onerous sanctions (such as an adjournment) to minimize any prejudice to the prosecution, and that a finding of willfulness was therefore required to justify the exclusion of Yamagata's testimony. *See Noble*, 89 F.Supp.2d at 457 (discussing the prosecution's familiarity with the locale of the alibi and its ability to obtain impeachment evidence against Yamagata).[3] The state trial court, however, made no finding of willfulness. After hearing argument, the trial court ruled:

> This Court will preclude [Yamagata from] giving testimony with respect to the alibi. The record indicates that no notice was served by the defense that they intended to produce an alibi witness. The first that the People were advised of their intention to call this witness was after the close of the People's case yesterday. The record further indicates ... that the scene of this crime was in front of the Around the Corner Bar. This being the case, the testimony of this witness that the defendant was inside the bar at the time of the shooting is clearly [alibi testimony]. The Court is not satisfied that there is an acceptable reason for not making this application sooner.

We agree with the district court that this ruling does not satisfy the constitutional standard.

### C. Remedy

█ Having concluded that the constitutional standard was not satisfied, the district court conducted its own review of the state trial record and granted the writ on the basis of its finding that the defense attorney's failure to provide a timely notice of alibi was not in fact willful. *See Noble*, 89 F.Supp.2d at 457. The state argues for the first time on appeal, however, that, if nothing else, the district court should be required to hold an evidentiary hearing to expand the record and consider additional evidence on the question of willfulness. We think that the particular circumstances of this case justify the grant of the writ without such a hearing.

The district court's finding that the defense attorney's failure to provide a notice of alibi was a result of "his misinterpretation of the governing discovery rules" and cannot "be attributed to a strategic choice," *Noble*, 89 F.Supp.2d. at 463, has strong support in the record of the proceedings in the state trial court. First, the colloquy between the trial court and the defense attorney indicates that the attorney thought that Yamagata was not an alibi witness because the indictment identified the scene of the crime as in the "vicinity" of the Around the Corner Bar, which the attorney thought included the area inside the bar. That colloquy also revealed that the attorney thought that the bar's close proximity to the shooting meant that the Yamagata's testimony was not an

---

**3.** We therefore need not decide whether, and to what extent, a finding of willfulness is required in every case. *See United States v. Portela*, 167 F.3d 687, 705 & n. 16 (1st Cir.), *cert. denied sub nom. Villaman–Rodriguez v. United States*, 528 U.S. 917, 120 S.Ct. 273, 145 L.Ed.2d 229 (1999). For purposes of the present case, we need only conclude that where prejudice to the prosecution can be minimized with relative ease, a trial court's exclusion of alibi testimony must be supported by a finding of some degree of willfulness in defense counsel's violation of the applicable discovery rules.

alibi. If the failure of the lawyer to respond to the alibi witness request was thus simply a mistake, it was of course not willful.

Second, the trial court itself said nothing to suggest that it thought the attorney had acted willfully or in bad faith. The court simply found no "acceptable" reason for the attorney's failure to provide a notice of alibi. *See Escalera*, 852 F.2d at 48 ("The absence of a good excuse is not necessarily commensurate with 'willful' conduct.").

Third, contrary to the state's repeated assertions, *see* Appellant's Br. at 18, 22, 27, 33, 34, 35, Yamagata was not a surprise witness; he was on the defense's pre-trial witness list and his name was mentioned in court in that connection three times. This is strong evidence against a finding that the non-compliance was willful.

Finally, the state's proffer of what it would prove on remand has little bearing on the issue of willfulness.

Although we remanded in *Escalera* for an evidentiary hearing on willfulness, we did so because we concluded that the record did not "permit[ ] us to apply the standards enunciated in *Taylor*." 852 F.2d at 48. In this case, however, "in light of the record . . . which includes an explanation by counsel negating the possibility that [his] omission was a strategic choice," we conclude that "[n]o . . . remand is required." *Brown v. United States*, 167 F.3d 109, 110 (2d Cir.1999).

We also note that the remand in *Escalera* was particularly appropriate because

the district court's decision in that case preceded the Supreme Court's decision in *Taylor* and was therefore ambiguous on the question of willfulness. *See Escalera*, 852 F.2d at 48. In this case, by contrast, Judge Sand was fully aware that his task was to determine whether defense counsel acted willfully, and his findings on that score are clear. *See Noble*, 89 F.Supp.2d at 457, 462–63. His decision not to hold an evidentiary hearing, when the state not only failed to request such a hearing but opposed the petitioner's attempt to expand the record, was justified by the record and did not constitute an abuse of discretion. *See Nieblas v. Smith*, 204 F.3d 29, 32 (2d Cir.1999) (a district court has "broad" discretion whether "to hear additional evidence on behalf of the state") (citing cases). We therefore conclude that a remand is unnecessary.[4]

### D. Harmless Error

The Appellate Division concluded that any error introduced by counsel's failure to properly call Yamagata was harmless in light of the otherwise significant evidence against Noble. The district court disagreed, holding that "[w]e are persuaded, after a thorough examination of the record in this case, that the exclusion of Yamagata's testimony did have a substantial and injurious effect in determining the jury's verdict." *Noble*, 89 F.Supp.2d at 458. Our own review of the record supports the district court's conclusion, for substantially the same reasons that the district court has articulated.[5]

---

4. Because we conclude that the state trial court committed constitutional error in excluding Yamagata's testimony, we decline to address the petitioner's alternative claim that he received constitutionally ineffective assistance of counsel.

5. We note that the pre-AEDPA standard of review discussed in part II.A above does not

apply to our harmlessness determination because harmlessness was "adjudicated on the merits" by the Appellate Division. It is well-settled that on direct review, a state appellate court may find a constitutional error harmless only if it is harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Prior to the passage of AEDPA, federal habeas

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court. The mandate shall issue forthwith.

JACOBS, *Circuit Judge,* dissenting:

As to all but one point, I concur in the majority opinion. Thus I agree that Noble's habeas petition was timely (Part I), that it is not necessary to determine whether AEDPA applies (Part II.A), that, under *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988), the state court erred in failing to determine whether defense counsel's non-compliance with § 250.20 was willful (Part II.B), and that this failure was not harmless (Part II.D).

I respectfully dissent from Part II.C ("Remedy") only. Rather than affirm the grant of the writ, I would remand to the district court for a hearing to determine whether defense counsel's conduct was willful, because if it was, the exclusion of the testimony was not constitutional error.

The majority opinion sees "strong support in the record" for ascribing counsel's non-compliance with § 250.20 to "his misinterpretation of the governing discovery rules," and further posits that "the state's proffer of what it would prove on remand has little bearing on the issue of willfulness." *Maj. Op.* at 100–101.

I read the record differently. Noble's counsel was an experienced criminal defense lawyer and can be presumed to understand who is an alibi witness. At the same time, counsel had good reason to believe that Yamagata's testimony was of a kind that would be effective only if the government was surprised and lacked an opportunity to prepare for it. And Noble's counsel had the means to engineer this surprise: Noble's counsel was also counsel to Yamagata, and Yamagata and Noble were friends from prison days. One could find that counsel withheld Yamagata's name until such time as Yamagata could no longer be interviewed by the government (as Yamagata's lawyer, Noble's counsel could see to that), or fully investigated. In any case, I think that the circumstances are sufficiently ambiguous to justify fact-finding. *See Escalera v. Coombe,* 852 F.2d 45, 48–49 (2d Cir.1988) (remanding habeas petition involving exclusion of alibi witness testimony, holding that "in the absence of other error requiring state court proceedings, it [is] appropriate for the district court to hold its own evidentiary hearing."). *Cf. Taylor v. Illinois,* 484 U.S. 400, 412 n. 17, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (noting "the ease with which an alibi

---

courts reviewing state harmlessness determinations employed a standard less demanding than *Chapman,* asking whether an error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). After AEDPA, the question arises whether a federal habeas court should continue to apply *Brecht* or determine instead whether the state court's decision was "contrary to, or involved an unreasonable application of" *Chapman.* 28 U.S.C. § 2254(d)(1); *see, e.g., Maurino v. Johnson,* 210 F.3d 638, 645 (6th Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 427, 148

L.Ed.2d 435 (2000) (adhering to *Brecht* ); *Hale v. Gibson,* 227 F.3d 1298, 1325 (10th Cir.2000) (same); *Whitmore v. Kemna,* 213 F.3d 431, 433 (8th Cir.2000) (expressing skepticism about the vitality of *Brecht,* but declining to decide the issue); *Anderson v. Cowan,* 227 F.3d 893, 898 n. 3 (7th Cir.2000) (noting the issue but declining to decide it). The Appellate Division in this case failed to apply *Chapman,* holding that the error was harmless "in view of the overwhelming evidence of guilt." *Noble,* 209 A.D.2d at 735–36, 618 N.Y.S.2d at 124. Because we conclude that the error was not harmless under both possible standards of review, we decline to express a view as to which standard should apply.

can be fabricated" (quoting *Williams v. Florida,* 399 U.S. 78, 81, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970))).

Before a new trial is mandated, we should assure that there has in fact been constitutional error. A remand for fact-finding may avoid unnecessary involvement of the federal judiciary in state criminal proceedings.