Junior COLLINS, Petitioner,

v.

D. ARTUS, Respondent.

No. 05 Civ. 10070(DC).

United States District Court,
S.D. New York.

July 18, 2007.

Junior Collins, Malone, NY, Petitioner Pro Se.

Andrew M. Cuomo, Attorney General of the State of New York, New York City (Luke Martland, Ashlyn Dannelly, Assistant Attorneys General, of Counsel), for Respondent.

### *MEMORANDUM DECISION*

CHIN, District Judge.

*Pro se* petitioner Junior Collins brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Collins was convicted, following a jury trial in the Supreme Court of the State of New York, New York County, of attempted burglary in the second degree and possession of burglar's tools. He was sentenced to two concurrent terms of imprisonment—eighteen years to life on the attempted burglary count and one year on the possession of burglar's tools count. Collins contests his conviction on the following grounds: (1) the evidence supporting the attempted burglary conviction was legally insufficient; (2) the trial court's erroneous answers to a jury note violated his due process rights;

(3) the prosecution's suppression of evidence favorable to him violated his due process rights; and (4) prosecutorial misconduct. The Court has reviewed the parties' submissions and the record of the proceedings below. For the reasons that follow, the petition is denied.

## BACKGROUND

### I. The Facts

The following is a summary of the facts adduced at trial.

On May 29, 1998 at 6:00 a.m., Maria Toro exited her fifth-floor apartment at 681 West 193rd Street to visit her neighbor, Ramona Romero. (Tr. 26–27).[1] As Toro walked down the hallway, she saw a man standing at the door of Romero's apartment, apartment 5G, trying to place a metal object inside the doorknob. (Id. at 28–29). Toro retreated to her apartment and instructed her husband to call the police. (Id. at 30).

At approximately 6:08 a.m., New York City police officers O'Connor and Triolo received a radio transmission directing them to Toro's building. (Id. at 79–80). The officers arrived within minutes of receiving the radio transmission and went directly to the fifth floor. (Id. at 80–81). There, they found Collins standing in the hallway approximately four feet from the door of apartment 5G. (Id. at 86). The officers instructed Collins numerous times to place his hands on the wall, but Collins repeatedly removed them from the wall. (Id. at 84). As one of the officers placed Collins's hands on the wall, he noticed that Collins was holding something in his right hand. The officer ordered him to drop what he was holding and he complied, dropping "small thin pieces" of metal to the floor. (Id. at 84–85). The police identified the metal pieces as "lock picks." (Id. at 88).

The police then handcuffed Collins and sat him on the stairs near the elevator. (Id. at 85). When asked what he was doing in the building, Collins responded that he was "[t]here to see a girl" and that her name was "Keisha." (Id. at 98–99, 120–21). Two officers who had arrived at the scene, Officers Dukes and Levern, then knocked on apartment doors looking for someone named "Keisha" or someone living in the building who knew Collins, but they were unable to locate such a person. (Id. at 120–21, 132).

Approximately 15–20 minutes after initially seeing Collins at the door to apartment 5G, Toro came out of her apartment and saw Collins sitting on the stairs in police custody. (Id. at 30, 51). Toro told the officers that Collins was the man she had seen in front of apartment 5G. (Id. at 36, 56–58). When Collins was arrested, a further search of his person revealed additional lock picks of varying sizes and a two-way radio. (Id. at 86).

### II. Procedural History

#### A. The Indictment

Collins was indicted in the Supreme Court, New York County, on one count each of burglary in the second degree, attempted burglary in the second degree, and possession of burglar's tools.

#### B. Pre–Trial Hearings

On December 11, 1998, Wade, Mapp, and Dunaway hearings were held before the Honorable Joan Suldonik. Before calling its witnesses, the People provided Collins with Rosario material, including a copy of the "Sprint" report [2] and the 911 tape. The addresses, phone numbers, and

---

1. "Tr." refers to the trial transcript.

2. A "Sprint" report is a written excerpt of a 911 call or radio dispatch of an officer at a crime scene.

birth dates of the callers were redacted. Collins's counsel, Robert Ellis, Esq., objected to the redactions.

### C. The Trial

On February 8, 1999, Collins proceeded to a jury trial before the Honorable Charles H. Solomon.

#### 1. Testimony of Officer Dukes

Officer Dukes testified on behalf of the prosecution that Collins told him that he was in the building to see someone named "Keisha." (*Id.* at 121). On cross-examination, Ellis asked Dukes whether "it would be fair to say that the substance of [Collins's] statement was that he was present at the location to see a girl?" (*Id.* at 129). Dukes answered affirmatively. (*Id.*). Then, on re-direct, the prosecutor asked Dukes if Collins had provided Keisha's last name, her address, her phone number, what she looked like, or what apartment she lived in within the building. (*Id.* at 131). Dukes answered that Collins did not provide any of that information. (*Id.*).

#### 2. Testimony of Christina Mercedes

Christina Mercedes testified on behalf of the defense that she invited Collins to her apartment at 671 West 193rd Street, apartment 6H, at 6:00 on the morning of May 29, 1998, to "have relations." (*Id.* at 205–06). Mercedes testified that she considered 671 West 193rd Street to be "the same building" as 681 West 193rd Street because the two buildings are connected on the first floor. (*Id.* at 203). The two buildings are not, however, connected on the fifth floor, where Collins was seen and arrested. (*Id.* at 205–06).

#### 3. The Prosecutor's Summation

During summation, the prosecutor stated that Toro and Romero, who testified at trial for the prosecution, were scared of Collins. (*Id.* at 248–49, 251). The prosecutor also mentioned that Toro did not want to identify Collins in the courtroom as the man she saw attempting to enter Romero's apartment on the morning of May 29, 1998 because she was scared, and she was "still scared." (*Id.* at 248–49). The prosecutor argued that when Romero testified, "she was even more terrified than Mrs. Toro." (*Id.* at 251). Lastly, the prosecutor argued that Toro was telling the truth on the stand because no evidence was introduced to controvert her testimony. (*Id.* at 250). The prosecutor based this statement on the fact that Toro testified that she saw Collins with lock picks, and, as the prosecutor noted, 15 minutes later, the police found Collins with lock picks in his hand and in his pocket. (*Id.* at 250). After each of these statements, Collins's counsel objected and the Court overruled the objections. (*Id.* at 248, 250–51).

#### 4. The Jury Questions

During jury deliberations, the jury sent a note to the court asking, *inter alia,* the following questions concerning the second-degree burglary count:

1) If you have been invited to a building by someone, yet you also have the intent to burglarize, does that negate your lawful entrance?

2) If you have been invited to a building and you burglarize while in the building have you then entered unlawfully? (intent changes).

(*Id.* at 316).

Over Collins's objection, the court answered "yes" to both questions. (*Id.* at 335).

#### 5. The Verdict

The jury found Collins guilty on all three counts. (*Id.* at 342).

#### 6. Collins's Motion to Set Aside Verdict

Collins moved to set aside the verdict pursuant to New York Criminal Procedure

Law ("C.P.L.") § 330.30, arguing that the court's answers to the jury's questions were erroneous, thereby infecting the jury's verdict not only as to the second-degree burglary count, but also as to the counts of attempted burglary and possession of burglar's tools.

The People ultimately conceded that the court had improperly instructed the jury on questions one and two. The court agreed, setting aside the verdict on the burglary in the second degree count.[3] Justice Solomon, however, declined to set aside the verdict with respect to the remaining two counts, concluding that the erroneous answers related only to [Collins's] initial entry into the apartment building as a whole" and "could in no way have related to the attempted entry, with lock picks, into an apartment ... occupied by a complete stranger. (Record on Appeal at 9).

### 7. *Sentencing*

Based on Collins's prior criminal history—namely, a 1987 weapons possession conviction in Kings County Supreme Court—the court deemed him a persistent violent felony offender and sentenced him to a determinate term of eighteen years to life imprisonment on the attempted second-degree burglary charge. Collins was also sentenced to a determinate term of one year imprisonment on the possession of burglar's tools charge.

### D. *The Appeals*

Through his lawyer, Robert Ellis, Collins appealed to the Appellate Division,

First Department, claiming that: (1) his conviction for attempted second-degree burglary was legally insufficient because he did not come "dangerously close" to committing second-degree burglary; (2) because the trial court gave an erroneous supplemental jury instruction in response to the jury's questions, the court was required to set aside all of the counts charged; (3) the prosecution failed to disclose a complete and unredacted copy of the police radio call and a 911 tape in violation of *Rosario*; (4) the prosecutor committed misconduct when she elicited evidence of Collins's pre-trial silence in its direct case and made improper statements during summation; (5) in his prior Kings County weapons case, his lawyer provided ineffective assistance and, as a result, he was convicted and improperly adjudicated a violent felony offender by Justice Solomon; and (6) in the interest of justice, his sentence should be reduced.

On October 4, 2001, the First Department unanimously affirmed the conviction. *People v. Collins*, 287 A.D.2d 271, 730 N.Y.S.2d 511 (1st Dep't 2001).

By his counsel's letter dated November 5, 2001, Collins sought leave to appeal to the New York Court of Appeals on all of the grounds raised before the First Department. On December 28, 2001, the New York Court of Appeals denied the leave application.

### E. *Collins's Kings County C.P.L. § 440 Motion*

With the assistance of new counsel, Collins filed a motion in Kings County Su-

---

**3.** In its decision, the Court reasoned that the correct answer to the first question should have been "no," as "harboring an intent to commit a crime when you enter lawfully does not convert the lawful entry into an unlawful one." (Record on Appeal at 9). Similarly, the Court's response to the second question should also have been "no," because "the intent to commit a crime must exist contemporaneously with an unlawful entry in order to constitute a burglary." *Id.*

preme Court, dated July 13, 2002, pursuant to C.P.L. § 440.10 to vacate his prior weapons possession conviction under King's County Indictment No. 4529/87. Collins contended that in 1987, prior to entering a plea to the weapons possession charge, his then-counsel, Spiro Ferris, Esq., provided ineffective assistance when he failed to challenge the ballistics report supporting the indictment.

By order dated August 26, 2002, the court denied the motion to vacate, finding that Collins's arguments were without merit. Collins sought leave to appeal, and on September 3, 2003, the Appellate Division, Second Department, denied leave. On November 21, 2003, Collins moved for leave to renew the C.P.L. § 440.10 motion. Neither party, nor this Court, has been unable to determine the resolution of that motion.

### F. *Collins's New York County C.P.L. § 440 Motion*

On January 2, 2004, Collins filed a motion, with the assistance of new counsel, in New York County Supreme Court pursuant to C.P.L. § 440.10 to vacate the conviction at issue herein.[4] Collins argued that Ellis, his trial counsel, provided ineffective assistance because he failed to pursue the affirmative defense of renunciation and also failed to challenge the constitutionality of his prior convictions at sentencing. On May 25, 2004, Justice Solomon denied the motion to vacate, finding that the "motion [was] completely without merit." (Dannelly Decl. Ex. M)

On June 23, 2004, Collins filed a "motion for clarification in aid of appeal based upon actual innocence." The record is unclear as to resolution of that motion. On December 6, 2004, Collins filed a *pro se* "motion to vacate" the court's May 25, 2004 order denying his motion to vacate. According to Collins, he was forced to proceed *pro se* because while his motion for clarification was pending, he received notice that the law firm that had been representing him had gone out of business. On January 11, 2005, the court denied Collins's motion to vacate. Collins sought leave to appeal the denial of the motion to vacate on February 11, 2005. The First Department denied leave on April 7, 2005.

### G. *The Instant Petition*

Proceeding *pro se,* Collins filed the instant § 2254 petition, dated October 11, 2005.[5] By order dated November 30, 2005, the Court directed Collins to file within sixty days an amended petition, demonstrating why his petition was timely and whether he had exhausted the grounds raised for federal habeas corpus relief through all of the available state court remedies. On February 8, 2006, Collins filed an amended *pro se* habeas petition. By order dated April 25, 2006, the Court again directed Collins to file an amended petition within sixty days, for Collins had failed to indicate why his petition was timely and whether he had exhausted his state court remedies. Collins filed a second amended petition on June 16, 2006. Respondent moved to dismiss Collins's sec-

---

4. Collins filed the motion with the assistance of counsel, and thus does not receive the benefit of the "prison mailbox rule." The "prison mailbox rule" deems a *pro se* prisoner's legal documents "filed" when they are given to prison officials for transmission to the courts. *See Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Noble v. Kelly,* 246 F.3d 93, 97–98 (2d Cir.2001). The date of filing is the appropri-

ate date from which to measure any period of statutory tolling for the purpose of analyzing the timeliness of this petition. *See id.*

5. Under the "prison mailbox" rule, this *pro se* petition, dated October 11, 2005, is considered filed when handed over to prison officials for forwarding to the court; accordingly, the Court treats October 11, 2005 as the date of filing. *Noble,* 246 F.3d at 97–98.

ond amended petition on November 8, 2006, and on January 4, 2007, Collins filed a "traverse," which the Court treats as opposition to respondent's motion to dismiss.

## DISCUSSION

### I. Statute of Limitations

#### A. AEDPA Limitations Period

##### 1. Applicable Law

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas corpus petitioner must file his petition within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Second Circuit has held that a state conviction becomes "final" when the time to seek certiorari to the United States Supreme Court has expired, which is 90 days after the date direct review of the case has been completed by the highest court in the relevant state. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir.2001).

■ The one-year limitations period under AEDPA is tolled while "a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see Artuz v. Bennett*, 531 U.S. 4, 5, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). "[A] state court petition is 'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." *Id.* at 7, 121 S.Ct. 361. In the case of a motion to vacate a conviction under C.P.L. § 440.10, the statute of limitations is tolled from the date the motion is filed to the date it is decided by the trial court, as well as during the pendency of an application for leave to appeal from the trial court's denial of that motion. *Foster v. Phillips*, No. 03

Civ. 3629, 2005 WL 2978686, at *4 (S.D.N.Y. Nov. 7, 2005); *see Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). This tolling provision excludes time during which properly filed state relief applications are pending, but it does not restart the statute of limitations clock. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000).

##### 2. Application

Collins's petition is untimely. The First Department affirmed his judgment of conviction on October 4, 2001, *Collins*, 287 A.D.2d 271, 730 N.Y.S.2d 511 (1st Dep't 2001), and the Court of Appeals denied Collins's application for leave to appeal on December 28, 2001. His conviction became final 90 days later, on March 29, 2002, the date his time to seek a writ of certiorari to the United States Supreme Court expired. *See Williams*, 237 F.3d at 150–151. Therefore, absent any tolling, Collins had until March 31, 2003 to timely file his habeas petition, as March 29, 2003 fell on a Saturday. *See* Fed.R.Civ.P. 6(a).

Collins filed two post conviction motions under C.P.L. § 440.10, one in Kings County Supreme Court challenging his prior weapons conviction, and one in New York County Supreme Court challenging the instant conviction. Respondent argues that Collins's Kings County motion challenges an entirely separate conviction from the New York County conviction at issue here, despite its consideration by the sentencing court in adjudicating Collins a persistent violent felony offender. As a result, respondent contends, the time during which the Kings County motion was pending does not toll the one-year statute of limitations.

Even giving Collins the benefit of tolling for the period that his Kings County motion was pending, the instant petition is still untimely. Collins filed the Kings

County motion on July 13, 2002, and the Second Department denied leave to appeal on September 3, 2003. Thus, the statute of limitations ran for 104 days, from the date Collins's conviction became final until he filed the Kings County motion. The statute of limitations was then tolled for 417 days, from July 13, 2002 until September 3, 2003, while that motion was pending. After the Second Department denied leave to appeal, the statute of limitations ran for an additional 121 days before Collins filed his C.P.L. § 440.10 in New York County motion challenging the instant conviction on January 2, 2004. The court denied the latter motion on May 25, 2004. The statute of limitations was thus tolled for an additional 143 days, leaving Collins with 140 days to timely file his petition.[6] Thus, the statute of limitations expired on October 12, 2004. Collins, however, did not file his initial habeas petition until October 11, 2005, one year after the statute of limitations had run. Accordingly, the instant petition is untimely unless equitable tolling applies.

### B. *Equitable Tolling*

### 1. *Applicable Law*

In certain circumstances, a court may excuse a petitioner's delay in filing a motion pursuant to 28 U.S.C. § 2254 under the doctrine of equitable tolling. *Smith v. McGinnis,* 208 F.3d at 17. The one-year limitations period is subject to equitable tolling only in "rare and exceptional" cir-

cumstances. *Id.* (quoting *Turner v. Johnson,* 177 F.3d 390, 391–92 (5th Cir.1999)). The Supreme Court has cautioned that the doctrine of equitable tolling should be used "only sparingly" and not in cases involving "garden variety claims of excusable neglect." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990).

To equitably toll the one-year limitations period, a party seeking to rely on the doctrine "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing *Irwin,* 498 U.S. at 96, 111 S.Ct. 453). These requirements are to be strictly construed. *Barbosa v. United States,* No. 01 Civ. 7522, 2002 WL 869553, at *2 (S.D.N.Y. May 3, 2002). To establish extraordinary circumstances, a petitioner must support his allegations with evidence; he cannot rely solely on personal conclusions or assessments. *See Mendez v. Artuz,* No. 99 Civ. 2472, 2000 WL 991336, at *2 (S.D.N.Y. July 18, 2000) (holding that conclusory allegations do not meet the high burden required to justify tolling). Further, the party must show that he was unable to pursue his legal rights during the entire period that he seeks to toll. *Barbosa,* 2002 WL 869553, at *5. The Second Circuit has held that only a limited number of circumstances merit equitable

---

**6.** After the New York County Supreme Court denied his C.P.L. § 440.10 motion, Collins filed numerous other motions in that court, including a "Motion For Clarification In Aid of Appeal Based Upon Actual Innocence" and a *pro se* motion to vacate the court's May 25, 2004 denial of his § 440 motion. Because Collins did not seek leave to appeal to the Appellate Division from the Supreme Court's denial of his original New York County C.P.L. § 440 motion, Collins is not given the benefit of tolling for the period following the Su-

preme Court's denial of the motion. *See Artuz,* 531 U.S. at 7, 121 S.Ct. 361 (a state-court petition is "pending" from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures). To properly appeal the Supreme Court's denial of his § 440 motion, Collins had to seek leave to appeal within 30 days after service of the New York County Supreme Court's denial of his § 440 motion. *See* C.P.L. § 460.15; N.Y. Ct. Rules § 600.8.

tolling, such as "where an attorney's conduct is so outrageous and incompetent that it is truly extraordinary." *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir.2004).

### 2. *Application*

■ Collins contends certain of his lawyers defrauded him by filing a "slew of frivolous motions" to the state courts rather than preparing his habeas petition, for which Collins claims the lawyers were hired. He also argues that he should not be faulted for failing to timely file his petition because after the death of one of the lawyers and the subsequent resignation of the staff attorneys at that firm, he was forced to proceed *pro se*. (First Am. Pet. Ex. A). Neither of these arguments entitles Collins to equitable tolling.

Collins hired the firm in question some time in mid–2002, although it is unclear whether he hired the firm for the purpose of filing a habeas corpus petition. A letter from the firm dated June 12, 2002 states only that the firm had received Collins's paperwork and would begin an investigation into his case. Collins attaches to his reply what purports to be a letter to the firm, dated June 26, 2002, stating that he hired the firm to file his habeas petition and not any motions to the state court. He also attaches what purports to be a response from the firm, dated July 7, 2002, notifying him of the January 2004 deadline for filing a § 2254 petition, yet stating that collaterally attacking his conviction may provide faster redress given that time still remained to file a § 2254 petition. Regardless of whether Collins hired the firm to file his habeas petition or collateral motions challenging his conviction, he has not established that his attorney's conduct was "so outrageous and incompetent that it is truly extraordinary." *See Menefee*, 391 F.3d at 159.

Collins also cannot rely on the lawyer's death as a basis for equitable tolling. Collins learned of his death in August 2004, yet he did not file his habeas petition until October 2005. Furthermore, Collins did not act with reasonable diligence during the thirteen-month period that followed the lawyer's death. He argues that he was reasonably diligent because he attempted to retrieve his file from the lawyer's estate and when his attempts proved unsuccessful, he recreated the record to the best of his ability. This argument, however, is without merit, given his awareness of the deadline for filing his § 2254 petition, as evidenced by the July 7, 2002 letter from the firm.

Because Collins has failed to assert a "rare and exceptional" basis to justify equitable tolling, I conclude that the petition is untimely. I will nonetheless address the merits of the petition.

## II. *Federal Review of State Convictions*

The AEDPA "placed a new restriction on the power of the federal courts to grant writs of habeas corpus to state prisoners." *Williams v. Taylor*, 529 U.S. 362, 399, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). AEDPA sets forth new standards of review that make it more difficult for a habeas petitioner to obtain federal relief from a state conviction. It provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to any judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2).

[C]learly established Federal Law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of Supreme Court decisions as of the time of the relevant state-court decision. *Carey v. Musladin,* —— U.S. ——, ——, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495) (internal quotations omitted). Moreover, AEDPA has been interpreted to require a petitioner to show not only that clearly established federal law was erroneously or incorrectly applied, but that the application was unreasonable. *See Williams,* 529 U.S. at 411, 120 S.Ct. 1495; *see also Lockyer v. Andrade,* 538 U.S. 63, 66, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *Bell v. Cone,* 535 U.S. 685, 688, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). As the Second Circuit has explained, "[a] state decision is 'contrary to' Supreme Court precedent only if either 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'confronts facts that are materially indistinguishable from a relevant Supreme Court precedent' and arrives at [the opposite result]." *Lainfiesta v. Artuz,* 253 F.3d 151, 155 (2d Cir.2001) (quoting *Williams,* 529 U.S. at 405, 120 S.Ct. 1495). The standards set forth by AEDPA apply to all habeas petitions filed after the statute's effective date of April 24, 1996. *See Boyette v. Lefevre,* 246 F.3d 76, 88 (2d. Cir.2001) (citing *Williams,* 529 U.S. at 402, 120 S.Ct. 1495).

AEDPA also specifies the applicable standard for federal review of state-court factual findings: a petitioner must demonstrate that a decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In habeas proceedings, a "determination of a factual issue made by a State court shall be presumed to be correct." *Id.* § 254(e)(1). The petitioner has the burden of rebutting this presumption "by clear and convincing evidence." *Id.*

## III. *The Merits*

I address each of Collins's four claims in turn.

### A. *Insufficient Evidence*

#### 1. *Applicable Law*

■ In evaluating a claim of insufficiency of evidence, a federal court must review the evidence in a light most favorable to the prosecution. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A guilty verdict must be affirmed if any " 'rational trier of fact could have found the essential elements' of the charged crime 'beyond a reasonable doubt.' " *United States v. Salmonese,* 352 F.3d 608, 618 (2d Cir.2003) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). In cases where the facts support conflicting inferences, the reviewing court must presume that the jury "resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781; *see also United States v. Chacko,* 169 F.3d 140, 148 (2d Cir.1999).

#### 2. Application

Collins claims that his conviction for attempted second-degree burglary was legally insufficient because the prosecution failed to prove that his conduct came "dangerously close" to burglarizing an apartment, as required by the New York Penal Law. At trial, the prosecution proved that Collins was caught attempting to insert a thin piece of metal into the door of Ramona Romero's apartment. (Tr. at 29, 48). Within minutes, the police found him still standing outside Romero's apartment with several metal lock picks on his person.

(*Id.* at 84, 86–88, 104–109, 115–19, 129). From this evidence, a rational trier of fact surely could have concluded that Collins "knowingly attempted to unlawfully enter a dwelling, while intending to commit a crime therein, and that he came dangerously close to doing so." *See* N.Y. Penal Law §§ 110.00, 140.25(2).

The First Department concluded that the verdict was based on legally sufficient evidence. *Collins,* 730 N.Y.S.2d at 511. Moreover, the court held that:

"[t]he evidence established that defendant came 'dangerously close' to burglarizing an apartment and was in possession of burglar's tools where a witness had observed defendant trying to place a metal object inside the doorknob of her neighbor's apartment and, minutes later, police found defendant standing in the hallway near the apartment still holding a metal object that was sufficiently established to be a lock pick, as were other such objects found on his person."

*Id.*

■ The court also found that although "[t]here is no requirement that defendant take the final step necessary to accomplish the crime ... any remaining steps necessary to enter the apartment could have been readily accomplished by defendant." *Id.* Such findings are not contrary to established federal law. Thus, Collins fails to meet the "heavy burden" required to show that his petition should be granted on the grounds of insufficient evidence. *See Chacko,* 169 F.3d at 148.

### B. *Jury Instruction*

#### 1. *Applicable Law*

■ Generally, claims based on errors in jury instructions are matters of state law that do not raise federal constitutional questions. *Estelle v. McGuire,* 502 U.S. 62, 71–72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Errors in state jury charges are not reviewable on federal habeas absent a showing that "the jury charge deprived the defendant of a federal constitutional right." *Id.* The standard of review of a state court's supplemental instructions in response to a jury's question is "not whether 'the instruction is undesirable, erroneous or even universally condemned [but whether] the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *see also Urena v. Lape,* 373 F.Supp.2d 449, 459 (S.D.N.Y. 2005) (applying the jury charge analysis under *Estelle* and *Cupp* to trial court's response to jury question). The instruction "may not be judged in artificial isolation" but must be considered in the context of the instruction as a whole and the trial record. *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004).

#### 2. *Application*

Collins claims that the trial court's erroneous answers to questions one and two in the jury's note violated his due process rights. Specifically, he contends that by answering the questions in the affirmative, without instructing the jury that he was not charged with "burglarizing" inside the building but only with attempted burglary, the court "infected the consideration and deliberation process of the jury." (Dannelly Decl. Ex. A at 28).

As noted earlier, Collins argued on appeal that the trial court was required to set aside all counts of the indictment, rather than just the second-degree burglary count. The First Department agreed that the trial court was not required to set aside the verdict on the other two counts. The court concluded that the court's incorrect answers "did not infect the entire verdict and did not require the court to set

aside [Collins's] attempted burglary and possession of burglar's tools convictions." *Collins,* 730 N.Y.S.2d at 511. The court went on to add that "the decision to set aside only the burglary conviction was proper because the questions asked by the jury did not in any way concern [Collins's] conduct in attempting to enter the specific apartment unlawfully, and there was no danger of a spillover effect." *Id.*

■ It is clear that the trial court's erroneous answers to the jury's questions pertained only to the second-degree burglary count and had no effect on the attempted second-degree burglary count or the possession of burglar's tools count. The jury's questions asked only about Collins's initial entry into the building and not about his intent to enter a particular apartment by using lock picks once inside the building. After realizing its error, the trial court correctly set aside the verdict on the second degree burglary count. Thus, the trial court's erroneous answers to the jury's questions did not so infect the entire trial so as to violate due process. *See Cupp,* 414 U.S. at 147, 94 S.Ct. 396.

### C. *Rosario/Brady Claim*

Collins claims that "the suppression by the prosecution of evidence favorable to Collins upon request violated due process." (Sec. Am. Pet. at 3). Before trial, Collins objected to the *Rosario* material provided by the prosecution because the addresses, phone numbers, and birth dates of the 911 callers were redacted on the Sprint report and 911 tape. Respondent assumes that Collins attempts to raise the *Rosario* claim that he raised on direct appeal. (Opp. at 22). In his reply, however, Collins contends that he is raising a claim under *Brady v. Maryland* in connection with the *Rosario* claim. I will address each in turn.

### 1. *Applicable Law*

■ *Rosario* requires prosecutors in New York to "make available to the defendant . . . any written or recorded statement . . . made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness testimony". *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), as codified in N.Y. C.P.L. § 240.45(1)(a). A *Rosario* claim, however, is a state law claim that is not cognizable on habeas review. *Watkins v. Perez,* No. 05 Civ. 477, 2007 WL 1344163, at *24 (S.D.N.Y. May 7, 2007); *Pena v. Fischer,* No. 00 Civ. 5984, 2003 WL 1990331, at *10 (S.D.N.Y. Apr. 30, 2003) ("[F]ederal courts have consistently held that *Rosario* claims are not subject to federal habeas corpus review because they arise exclusively under state law.").

■ In *Brady v. Maryland,* the Supreme Court held that a criminal defendant's due process rights encompass the obligation of the prosecution to produce evidence that is material either to guilt or to punishment. 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Evidence is considered to be material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Accordingly, the three essential elements to a *Brady* claim are (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State must have suppressed that evidence, either willfully or inadvertently, and (3) prejudice must have ensued. *Eubanks v. United States,* No. 97 Civ. 3891, 2005 WL 1949474, at *7 (S.D.N.Y. Aug.11, 2005) (citing *Banks v. Dretke,* 540 U.S. 668, 691, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004)).

### 2. *Application*

A violation of *Rosario* does not present a federal constitutional question upon which federal habeas corpus relief can be premised. *See Watkins,* 2007 WL 1344163, at *24; *Pena,* No. 00 Civ. 5984, 2003 WL 1990331, at *10. Accordingly, Collins's *Rosario* claim is denied.

As for Collins's *Brady* claim, respondent is correct that Collins does not mention *Brady* in his second amended habeas corpus petition and that he did not raise a *Brady* claim in connection with his *Rosario* claim before the First Department.[7] Thus, Collins's *Brady* claim may be unexhausted. Even viewing his *Rosario* claim through the lens of *Brady,* however, Collins has failed to show how an unredacted copy of the Sprint report and 911 tape would have been favorable to him. Furthermore, he has failed to show how the unavailability of the redacted addresses, birth dates, and phone numbers on the Sprint report and the 911 tapes was prejudicial. The *Brady* claim is therefore without merit.

### D. *Prosecutorial Misconduct*

### 1. *Applicable Law*

 The standard of review for a habeas claim of prosecutorial misconduct is whether the prosecutor engaged in " 'egregious misconduct ... amount[ing] to a denial of constitutional due process.' " *Floyd v. Meachum,* 907 F.2d 347, 353 (2d Cir. 1990) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 647–48, 94 S.Ct. 1868, 40 L.Ed.2d 431,(1974)). A reviewing court must determine whether the prosecutor's remarks were " 'so prejudicial that they rendered the trial in question fundamentally unfair.' " *Id.* (quoting *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986)).

When the purported misconduct consists of comments during summation, the relevant question for a reviewing court is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Mere impropriety of the comments will not meet this standard; the prosecutor's remarks must be so prejudicial that they rendered the trial in question fundamentally unfair. *Floyd,* 907 F.2d at 355. Improper remarks in summation "must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Young,* 470 U.S. 1, 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

To determine whether a prosecutor's summation caused "substantial prejudice," the Second Circuit has established a three-factor test: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements. *Floyd,* 907 F.2d at 355.

### 2. *Application*

 First, Collins argues that the prosecutor improperly introduced evidence of his pre-trial silence when the prosecution questioned Officer Dukes about Collins's failure to provide the police at the scene with the last name, address, telephone number, or description of the woman Collins said he was in the building to visit. As the First Department concluded, the fact that Collins had made an exculpatory statement—that he was in the building to see a girl named Keisha—to the

---

7. *Brady* does appear in Collins's brief to the First Department in a lengthy footnote attached to his jury instruction claim. That footnote concerns the police department's

lack of trespass affidavit on the date of the robbery. This does not, however, relate to the claim he now raises regarding the redacted Sprint report and 911 tape.

police at the scene clearly entitled the prosecutor to elicit on redirect examination that Collins's statement contained significant and unnatural omissions. *Collins,* 730 N.Y.S.2d at 511. In fact, it was Ellis, Collins's trial counsel, who began the line of questioning about Collins's presence in the building to see a girl and Ellis who called Christina Mercedes to testify that she was, in fact, that girl. Once Collins stated that he was in the apartment building to "see a girl," the prosecutor was entitled to explore the complete substance of Collins's statements, including any significant omissions. Accordingly, I find that the conviction was certain despite the prosecutor's questions about Collins's silence.

■ Second, Collins contends that the prosecutor committed misconduct on summation when she told the jury that Toro did not want to identify Collins because she was scared. On appeal, "Collins argued that this commentary invoked the fictional 'fear' of [prosecution witnesses Toro and Romero] to explain gaps and inconsistencies in their testimony." I agree that the prosecutor's remarks were improper. By arguing that Toro and Romero did not want to testify or identify Collins at trial because they were scared, the prosecutor was, in effect, testifying on behalf of Toro and Romero. Moreover, the prosecutor was arguably suggesting that the defendant was dangerous. Although Collins objected to the prosecutor's comments, the Court overruled his objections and did not give the jury a corrective instruction. The comments, however, are not a basis for relief, for the evidence of Collins's guilt was overwhelming. He was caught red-handed attempting to enter Romero's apartment using lock picks, and thus his conviction was certain despite the prosecutor's improper statements. *See Floyd,* 907 F.2d at 355. Within the context of the entire trial and the prosecutor's summation as a whole, the improper com-

ments did not amount to prejudicial error. *See Young,* 470 U.S. at 12, 105 S.Ct. 1038.

■ Finally, Collins argues that the prosecutor attempted to shift the burden of proof by arguing in summation that the jury had heard no evidence at all to controvert [Toro's] accuracy in what she [had] seen. (Tr. at 250). Ellis objected on the ground of burden-shifting and the court promptly overruled the objection. This argument is unavailing. In the context of the entire trial, the prejudicial effect of the prosecutor's statements, if any, was minimal. Furthermore, the trial court gave the jury specific instructions on the burden of proof, stating that:

> A defendant is never required to prove anything. The People, having accused the defendant of the crimes charged, have the burden of proving the defendant guilty beyond a reasonable doubt. And that burden never shifts, it remains on the People. And the presumption of innocence remains with every defendant from the beginning of the trial until such time, when during deliberations, the jury may be convinced the People have proven the defendant's guilt beyond a reasonable doubt.

*(Id.* at 283). Thus, the court's instructions to the jury were sufficient to address any potential confusion arising from the prosecutor's comments. In short, the prosecutor's comments did not deprive Collins of a fair trial.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because Collins has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253 (as amended by AEDPA). I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be tak-

en in good faith. The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.